# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | | |
|---|---|---|
| PETER TRAN | § | |
| | § | |
| v. | § | A-17-CV-510 LY |
| | § | |
| TRACY TRAN | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

TO: THE HONORABLE LEE YEAKEL
UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 24), Plaintiff's Response (Dkt. No. 26), and Defendant's Reply (Dkt. No. 33); and Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. No. 31). The undersigned submits this Report and Recommendation to the District Judge pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules.

## I. GENERAL BACKGROUND

Plaintiff Peter Tran brought suit in Texas state court against Defendant Tracy Tran, the President of Domain Ramen, Inc. Domain Ramen is a Texas corporation that owns and operates Jinya Ramen Bar in Austin, Texas. Plaintiff, an investor in Domain Ramen, brought this shareholder derivative action under TEX. BUS. ORG. CODE § 21.563 alleging that Defendant (1) failed to allow him to inspect the corporate books and records, and (2) breached her fiduciary duty. He also asserts claims for fraud, fraud in a transaction involving stock, fraud in the inducement, and conversion. He also seeks a declaratory judgment that he owns a percentage of shares in the company. Defendant removed the action to this Court, claiming diversity between the parties. The Court, in a previous Order, dismissed each of Plaintiff's fraud claims, but gave Plaintiff leave to amend.

In the Amended Complaint, Plaintiff once again asserted his derivative claims under TEX. BUS. ORG. § 21.563. He also reasserted his claims for fraud, fraud in a transaction involving stock, fraudulent inducement, and conversion. Plaintiff contends that he and the Defendant entered into an oral agreement, by which each was to supply fifty percent of the capital contribution, and that he would receive forty-five percent ownership in the company. Plaintiff claims that this offer induced him to enter into the agreement and to provide capital contributions. However, according to Plaintiff, the discussions broke down after one year. Plaintiff had already contributed over $400,000 at this point, and he therefore argues that Defendant committed fraud by inducing him to contribute this money without ever intending to issue the shares allegedly owed him. Defendant now moves to dismiss all of Plaintiff's claims for failure to state a claim. Plaintiff opposes the motion, and in the alternative once again seeks leave to amend his complaint.

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an action for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted), *cert. denied*, 552 U.S. 1182 (2008). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Id.* The court generally is not to

look beyond the pleadings in deciding a motion to dismiss. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### III. ANALYSIS

Defendant moves to dismiss the fraud claims. He argues Plaintiff has failed to adequately plead: (1) Defendant's intent to deceive; (2) a misrepresentation of fact; or (3) Plaintiff's justifiable reliance. Defendant also contends that Plaintiff's claims should be dismissed because the Plaintiff has not adequately pled the existence of an agreement for Plaintiff's purchase of Domain Ramen shares. Finally, Defendant moves to dismiss Plaintiff's shareholder derivative claims on the basis that Plaintiff was never issued stock in Domain Ramen, and therefore has no standing to bring these claims.

**A.     Fraud Claims**

Plaintiff brings claims for common law fraud, fraudulent inducement, and fraud in a transaction involving stock, alleging that Defendant induced him to invest capital in Domain Ramen on the assurance that he would receive shares in the corporation. Defendant argues that the fraud claims fail for three reasons: (1) Plaintiff has not shown that Defendant never intended to perform when the alleged promise was made; (2) Plaintiff has not alleged a misrepresentation of fact; and (3) Plaintiff never relied on Defendant's alleged promise, or alternatively, that Plaintiff's reliance was not justified. Plaintiff contends that he has sufficiently pled each of the elements.

To allege a claim for fraud, a plaintiff must show: (1) that a material representation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party should act upon it; (5) the party acted in reliance on the representation; and (6) the party thereby suffered injury. *Aquaplex, Inc. v. Rancho La*

*Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009).[1] "As a general rule, the failure to perform the terms of a contract is a breach of contract, not a tort. However, when one party enters into a contract with no intention of performing, that misrepresentation may give rise to an action in fraud." *Crim Truck & Tractor Co. v. Navistar Int'l Transp. Corp.*, 823 S.W.2d 591, 597 (Tex.1992) (citations omitted). A promise to act in the future constitutes fraud only when made with the intention, design and purpose of deceiving—a promise made with no intention of performing the act. *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). "Failure to perform, standing alone, is no evidence of the promisor's intent not to perform when the promise was made, but a circumstance to be considered with other facts to establish intent." *Bank One, Texas, N.A. v. Stewart*, 967 S.W.2d 419, 444 (Tex.App.—Houston [14th Dist.] 1998, pet. denied).

First, Defendant argues that Plaintiff cannot show that when the alleged representation was made, Defendant knew it was false. Under Rule 9(b), "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). However, here, Defendant is not arguing that Plaintiff must plead this element with more specificity. Rather, she contends that the facts, as alleged, in fact demonstrate that Defendant clearly intended to perform at the time the representations were made, and thus Plaintiff's claims for fraud should fail. Defendant contends that all of the alleged facts show that the parties negotiated for more than a year

---

[1] The Plaintiff brings claims for common law fraud and fraudulent inducement. "Fraudulent inducement is a distinct category of common-law fraud that shares the same elements but involves a promise of future performance made with no intention of performing at the time it was made." *Ibe v. Jones*, 836 F.3d 516, 525 (5th Cir. 2016) (quoting *Zorrilla v. Aypco Constr. II, LLC*, 469 S.W.3d 143, 153 (Tex. 2015)). The Plaintiff also brings a claim for fraud in a transaction involving securities under TEX. BUS. & COM. CODE § 27.01(a)(2). This section similarly "embod[ies] the same elements of common law fraud, including the elements of reliance and materiality," but "applies only to situations when there is an actual conveyance of the stock, and not to situations where there is merely a breach of contract to convey stock." *U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 406 (5th Cir. 2000).

4

to reach an agreement, and that the mere failure of the parties to ultimately reach a written agreement does not evidence that she never intended to perform. However, on a Rule 12(b)(6) motion, all facts are viewed in the light most favorable to the non-movant. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Plaintiff asserts that Defendant induced him to enter into an agreement to provide funding for the business, though she never intended to issue the shares he is allegedly owed. In support, Plaintiff asserts that he asked a number of times for the written agreement, but that Defendant continued to put him off, claiming that "the lawyer was busy" and that "they should focus on ensuring the timely launch of the first restaurant location." Dkt. No. 23 at 7. It was not until Plaintiff had already invested a significant amount in the restaurant and participated in plans for the venture for months that Defendant first provided written terms to the Plaintiff. Similarly, Plaintiff points to the fact that Defendant—after months of quoting Plaintiff a 45 percent share in the corporation and proceeding with an even share of capital contributions—allegedly unilaterally changed the agreement, decreasing the percentage of shares he was to receive. Though the Court agrees with Defendant that Plaintiff's assertions do not clearly show that Defendant made the representation with knowledge that it was false, neither do the facts refute this claim.[2] As such, Plaintiff has sufficiently pled the intent element.

Defendant also argues that Plaintiff has failed to clearly articulate the false representation on which he alleges he relied. Here, she points out that Plaintiff alleges both that he already owns shares in the corporation and that he was promised that he *would* receive forty-five percent of the shares. Dkt.

---

[2]As is clearly evident from the above paragraph, this case has a number of factual questions that are simply not ripe for review. Defendant points to facts alleged by the Plaintiff that could support her arguments. However, at the motion to dismiss stage, the question is not whether the Plaintiff will ultimately prevail, but rather whether he has alleged facts that would support a plausible claim for relief. This he has done.

No. 24 at 8. Though the Court agrees with Defendant that Plaintiff's Amended Complaint could be clearer on this point, this is a distinction without a difference. Plaintiff contends that he was promised a forty-five percent share in the corporation, so long as he performed under the alleged agreement. Plaintiff promised to provide fifty percent of the capital contributions to open the restaurant, which, according to the Complaint, he did; therefore, taking the facts in the Amended Complaint as true, Plaintiff was entitled to his forty-five percent share under the oral agreement made between the parties—which would make him an owner of the shares. Thus, it is clear that Plaintiff has alleged that Defendant falsely represented that he was entitled to a forty-five percent share in the company.

Finally, Defendant contends that Plaintiff has not alleged reliance on the false representation, or, regardless, that this reliance was not justified. He argues that the only "reliance" pled by Plaintiff was the initial contribution of funds. Dkt. No. 24 at 10. Instead, according to Defendant, the parties merely failed to successfully negotiate a contract and Plaintiff did not rely on any *false* statement when he made his initial capital contributions. The Court disagrees. As noted above, Plaintiff has sufficiently alleged that Defendant made the promise to transfer stock with knowledge of its falsity, such that Plaintiff's reliance on this statement for his initial capital contributions is actionable. Moreover, Plaintiff also pleads that he continued to contribute capital after this, and did so in reliance on Defendant's continued false assertions that he was part-owner in the company. Dkt. No. 23 at 9. As such, Plaintiff has alleged reliance on a false representation that caused his injury.

Further, Defendant's claim that Plaintiff was not justified in his reliance on the alleged oral agreement also fails. Texas law states that "a person may not justifiably rely on a representation if there are 'red flags' indicating such reliance is unwarranted." *Lewis v. Bank of Am., N.A.*, 343 F.3d 540, 546 (5th Cir. 2003) (internal quotations omitted). "[A] fraud plaintiff cannot recover if he blindly relies upon a misrepresentation the falsity of which would be patent to him if he had utilized his

6

opportunity to make a cursory examination or investigation." *Id.* (citing *Field v. Mans*, 516 U.S. 59, 71 (1995) (internal quotations omitted). Here, Defendant argues that Plaintiff invested the funds before the material terms of the agreement were sufficiently negotiated, and therefore that reliance on the promise of shares was not justifiable. Defendant points out that Plaintiff stated in the Amended Complaint that the documents articulating the alleged agreement "lacked information regarding the basis for the shares issued, and the price of the shares." Dkt. No. 23 at 8. However, the Amended Complaint also alleges that Plaintiff decided to invest after being informed that he would receive a forty-five percent share in the corporation. He further alleges that this percentage never changed during the negotiations and planning for the restaurant—at least until September 2016, when Plaintiff unilaterally reduced the offer to a twenty-five percent share. Dkt. No. 23 at 8. Thus, the actual price of each individual share or the number of shares ultimately issued would not necessarily be a material term. Instead, the material terms of the agreement, according to Plaintiff, were the percentage split of shares and capital contributions Plaintiff and Defendant were to make in Domain Ramen. Plaintiff has sufficiently alleged that the parties reached an agreement on his share in the corporation, and that he justifiably relied on Defendant's representations on this point. Therefore, Plaintiff's fraud claims should not be dismissed.

**B.     Ownership of Shares**

Separately, Defendant moves to dismiss Plaintiff's fraudulent inducement, conversion, declaratory judgment, and shareholder derivative claims on the basis that the parties never entered into an agreement, and, therefore, Plaintiff does not own shares in the corporation.[3] To allege the existence

---

[3] Plaintiff does not assert a breach of contract claim in this action. However, Plaintiff does not challenge Defendant's assertion that he must show an enforceable agreement to receive shares in Domain Ramen.

of an enforceable agreement, Plaintiff must show: "(1) an offer, (2) acceptance in strict compliance with the terms of the offer, (3) a meeting of the minds, (4) each party's consent to the terms, and (5) execution and delivery of the contract with the intent that it be mutual and binding." *Thornton v. Dobbs*, 355 S.W.3d 312, 316 (Tex. App.—Dallas 2011, no pet.). An oral agreement requires the same elements as a written contract, and in deciding whether such an agreement exists, "the court looks to the communications between the parties and to the acts and circumstances surrounding the communications." *Id.* The agreement "must address all of its essential and material terms with 'a reasonable degree of certainty and definiteness.'" *Fischer v. CTMI, L.L.C.*, 479 S.W.3d 231, 237 (Tex. 2016) (quoting *Pace Corp. v. Jackson*, 284 S.W.2d 340, 345 (1955)). In other words, the agreement "must at least be sufficiently definite to confirm that both parties actually intended to be contractually bound" and "enable a court to understand the parties' obligations.'" *Id.* (quoting *Fort Worth Indep. Sch. Dist. v. City of Fort Worth*, 22 S.W.3d 831, 846 (Tex. 2000)). "However, a contract need only be definite and certain as to those terms that are 'material and essential' to the parties' agreement." *Id.* "A lack of definiteness in an agreement may concern the time of performance, the price to be paid, the work to be done, the service to be rendered or the property to be transferred." *Gannon v. Baker*, 830 S.W.2d 701, 709 (Tex. App.—Houston [1st Dist.] 1992, writ denied). Further, "[w]hat terms are 'material' to a contract should be determined on an agreement-by-agreement basis." *Inimitable Grp., L.P. v. Westwood Grp. Dev. II, Ltd.*, 264 S.W.3d 892, 899 (Tex. App.—Fort Worth 2008, no pet.).

Here, Defendant argues that the parties never came to an agreement on the material terms, and therefore Plaintiff cannot show that he is entitled to shares in the corporation. In support, Defendant notes that Plaintiff has conceded that the parties never agreed on the price or number of shares. *See* Dkt. No. 24 at 12. Defendant once again argues that Plaintiff has only asserted that the parties agreed to a 45/55 split of shares, but never agreed on "the basis for the shares issued, and the price of the

8

shares." *Id.* (quoting Dkt. No. 23 at 8). However, this concession does not doom Plaintiff's suit, as these points are not necessarily material as a matter of law. In support of her argument, Defendant relies on the statement in *Gannon* that "terms must state the specific quantity of shares and the specific price" to be enforceable. *See* Dkt. No. 24 at 12-13 (quoting 830 S.W.2d at 709). *Gannon*'s support for this statement was *Consolidated Petroleum Inds., Inc. v. Jacobs*, 648 S.W.2d 363, 366 (Tex. App.—Eastland 1983, writ ref'd n.r.e.). In *Jacobs*, the court was relying on a now-deleted statute, which required that all transfers of stock be made in writing, unless it fit within a statutory exception. *Id.* Given their reliance on the now repealed statute, neither *Gannon* nor *Jacobs* have continuing applicability here. Moreover *Gannon* is distinguishable given that here Plaintiff was purchasing a *percentage* of stock, not a set number of shares, so the failure to identify the quantity of shares is irrelevant. Importantly, Plaintiff invested in the early stages of the corporation when the number of shares that the corporation planned to issue had not yet been decided, and this appears to be the point of contention. Thus, the exact number of shares to be allocated to Plaintiff was not a material term; what was material was the percentage of the total stock issued Plaintiff was supposed to receive. The same is true for the price of individual shares, given Plaintiff's allegation that the parties agreed to provide capital contributions of fifty percent. Therefore, at this stage, the material terms as alleged by Plaintiff are sufficiently definite to confirm the parties' obligations under this agreement.

Defendant also contends that the parties never reached an agreement even on these terms. This argument is based solely on an email, attached to Defendant's motion, in which Plaintiff allegedly states that the parties "either follow these inputs and update documents related to Jinya Ramen Bar located in Domain Austin to move forward *or no deal*." Dkt. No. 24 at 13 (emphasis added). This argument has no merit. First, this matter is before the Court on a Rule 12(b)(6) motion, and the Court is thus limited to the allegations of the Amended Complaint, and may not consider evidence outside

9

of the pleadings. *Spivey*, 197 F.3d at 774. Further, the emails are not even in admissible form, as they are attached without an affidavit and with no context. Moreover, it is not entirely clear from the parts provided that the emails are actually referring to the agreement for purchase of the shares in Domain Ramen. According to Plaintiff, this statement was made as "a refusal to sign any agreement contradicting the parties established oral agreement as to ownership interest." Dkt. No. 26 at 13. While there is clearly a fact issue as to whether the parties reached an agreement, it is not yet ripe for determination. Instead, on the facts as alleged in the Amended Complaint, Plaintiff has sufficiently pled the existence of an enforceable agreement purchasing shares in Domain Ramen. Accordingly, this argument fails.

C. **Shareholder Derivative Claims**

Finally, Defendant contends that the shareholder derivative claims should be dismissed for lack of standing. Defendant argues that Plaintiff's shareholder derivative claims—accounting and breach of fiduciary duty—require that he be a shareholder under Texas law. Under the Texas Business Organizations Code, a derivative proceeding may be "brought by a shareholder of a closely held corporation." TEX. BUS. ORG. CODE § 21.563(c). A shareholder under Texas law is "the person in whose name shares issued by a for-profit corporation . . . are registered in the share transfer records maintained by the for-profit corporation." TEX. BUS. ORG. CODE § 1002(81)(a). Thus, Defendant argues that Plaintiff has pled his way out of these claims by alleging that he was never issued stock in Domain Ramen. The Court disagrees.

Defendant cites to *White Point Minerals, Inc. v. Swantner*, 464 S.W.3d 884, 889 (Tex. App.—Corpus Christi 2015, no pet.) for the proposition that he must be a record holder of shares to be considered a shareholder under the statute. In that case, the court found that "the statutory rights . . . apply solely to a record or beneficial shareholder of a corporation at the time the demand is made

or action is filed." *Id.* Though this citation seems to directly support the Defendant's position, it is taken out of context. In that case, the individual—who neither party disputed had previously been a shareholder—had his shares bought by the company in connection with a merger. *Id.* at 886. The plaintiff alleged that before selling his stock, he had made a demand to see the books of the company. *Id.* at 886–87. However, the court in that case found that there was no evidence that he was *still* a shareholder at the time the demand was made. *Id.* at 889. Thus, the question in that case was one of timing, not ownership of shares.

*Krainz v. Kodiak Resources, Inc.*, 436 S.W.3d 325 (Tex. App.—Austin 2013, pet. denied) is more on point. The court in *Krainz* rejected arguments that the plaintiff never received stock certificates and lacked an enforceable contract to receive them. *Id.* at 331. Instead, the court held that "[t]he law does not require possession of a stock certificate to substantiate a claim of ownership of stock." *Id.* It looked to the fact that the statute also listed as a shareholder a "beneficial owner whose shares are held in a voting trust or by a nominee on the beneficial owner's behalf" to show that the term shareholder should not be so narrowly defined. *Id.* (citing TEX. BUS. ORG. CODE § 21.552(2)); *cf. Hydroscience Tech. Inc. v. Hydroscience, Inc.*, 401 S.W.3d 783, 792 (Tex. App.—Dallas 2013, pet. denied) ("We acknowledge the case law that holds delivery of a stock certificate or endorsement of said certificate is not necessarily required to show a transfer of stock."). Thus, *Krainz* supports the Plaintiff's argument that he need not be a record-holder of the shares to have standing to bring these claims. This is further bolstered by *Watts v. Miles*, 597 S.W.2d 386, 388 (Tex. Civ. App.—San Antonio 1980). In that case, the court employed a less formulaic requirement to prove ownership of shares, finding that —at least for conversion claims—the issuance of a stock certificate is not required to prove ownership. *Id.* (citing *Rio Grande Cattle Co. v. Burns*, 17 S.W. 1043, 1046 (Tex. 1891)). Rather, the court looked to the plaintiff's legal right to the shares. *Id.* Though *Watts* is not directly

11

on point, it offers further support for Plaintiff's contention that he is a shareholder by virtue of his legal right to own the shares, regardless of whether they were issued and recorded in his name. Because Plaintiff has sufficiently pled that he is entitled to shares in the corporation, he has sufficiently pled that he is a shareholder and is entitled to bring shareholder claims for accounting and breach of fiduciary duty.[4]

## IV. RECOMMENDATION

The undersigned Magistrate Judge **RECOMMENDS** that the District Judge **DENY** the Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. No. 24). The undersigned **FURTHER RECOMMENDS** that the District Judge **DENY AS MOOT** Plaintiff's Motion for Leave to File Second Amended Complaint (Dkt. No. 31).

## V. WARNINGS

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *Battles v. United States Parole Comm'n,* 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo review by the district court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the

---

[4]Obviously, the derivative claims are contingent on Plaintiff demonstrating a legal right to the ownership of shares. Thus, until that question is resolved, Plaintiff's shareholder derivative claims are actionable.

district court. *See* 28 U.S.C. § 636(b)(1)(C); *Thomas v. Arn*, 474 U.S. 140 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996).

SIGNED this 6th day of July, 2018.

_____
ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE